IN THE MATTER OF DISCIPLINARY PROCEEDINGS
AGAINST S. EDWARD HAUSNER, t/a SKYLINE
LOUNGE.

Argued June 5, 1972—Decided June 22, 1972.

Mr. *James J. Shrager* argued the cause for appellant S.
Edward Hausner, t/a Skyline Lounge (*Messrs. Hannoch,
Weisman, Stern & Besser,* attorneys).

*Mr. David S. Piltzer,* Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

PER CURIAM. The Division of Alcoholic Beverage Control suspended the license of S. Edward Hausner, t/a, Skyline Lounge, for possession of contraceptive devices and obscene literature in violation of Rules 9 and 17 of State Regulation 20. The Appellate Division affirmed (116 *N. J. Super.* 206 (1971)) and we granted certification (59 *N. J.* 526 (1971)).

Hausner operates a substantial restaurant with thirty employees at 789 Dowd Avenue, Elizabeth. His premises include rooms where food and liquor are served, a coffee shop, and a small office. The office, which has an entry door bearing a "private" sign, contains a couch, safe, desk, filing cabinet and lavatory facilities. Hausner was separated from his wife and used his office as living quarters, keeping his clothes there. He testified that he always kept the entry door to his office locked and kept the keys in his pocket.

During the afternoon of August 27, 1969 an ABC agent, in the company of several law enforcement officers, entered Hausner's restaurant to investigate a report that there was stolen liquor on the premises. They found no stolen property and at the conclusion of their search of the remainder of the premises they asked to be taken to his office. He unlocked the entry door and they looked around. The ABC agent then directed Hausner to open the safe, filing cabinet and desk, all of which were locked, and he did so with his keys. In the filing cabinet the agent found three books which the ABC Director later determined to be not obscene. In the desk he found three catalogs which the Director later determined to be obscene within the meaning of Rule 17 of State Regulation 20 which prohibits a licensee from having in his possession on the licensed premises any "obscene, indecent, filthy, lewd, lascivious or disgusting re-

cording, printing, writing, picture or other matter." In the safe he found three male contraceptives along with a partially used tube of Ortho Vaginal Jelly and Ortho diaphragm, which the Director later determined were possessed in violation of Rule 9 of State Regulation 20 which provides that no licensee shall possess "any contraceptive or contraceptive device" on the licensed premises. See 116 *N. J. Super.* at 208.

Hausner testified that the male contraceptives had been given to him for his own use and that the jelly and diaphragm belonged to his wife. He testified further that he received the catalogs unsolicited in the mail and was holding them at the request of a municipal councilman who was conducting a local anti-smut campaign. Although the Director did not express any opinion as to Hausner's testimony he did not suggest that there was anything to indicate a connection between the materials taken from Hausner's office and the operation of the restaurant or the sale of alcoholic beverages. To the contrary, the record leaves little room for doubt that the materials were strictly for Hausner's private use.

The Director's holding was that the mere presence of the materials within the technical outer borders of the licensed premises constituted regulatory violations warranting a substantial suspension of the license regardless of the undisputed indications that they were possessed by the licensee strictly for his private use under objective physical arrangements which more than adequately evidenced the strictly private nature of the possession. The Director's conclusions dealt only summarily with the private aspect of the possession; he said that he did not consider it any defense that the obscene material "was merely retained after it was received in the mail without solicitation" and that all licensees must see to it that no prohibited materials are ever "found on their licensed premises."

Some question has been raised as to whether the office was technically part of the licensed premises. We assume, for

present purposes, that on August 27, 1969 it was part of such premises although shortly thereafter the licensee's application was amended to exclude it. We assume, further, that if the catalogs or contraceptives were displayed or used or were available for display or use in connection with the operation of the restaurant or the sale of alcoholic beverages their presence on the licensed premises would violate lawful regulatory provisions. See *Jeanne's Enterprises, Inc. v. State of N. J., etc.,* 93 *N. J. Super.* 230 (*App. Div.*), *aff'd o. b.,* 48 *N. J.* 359 (1966); *Mazza v Cavicchia,* 15 *N. J.* 498 (1954); *In re Club "D" Lane, Inc.,* 112 *N. J. Super.* 577 (*App. Div.* 1971); *Davis v. New Town Tavern,* 37 *N. J. Super.* 376 (*App. Div.* 1955). These assumptions lead us to the points which Hausner has advanced in support of his appeal, only the first of which we need deal with here. He urges in his first point that "the enforcement of an absolute prohibition against possession of the articles in question upon the facts presented is unwarranted, unreasonable and unconstitutional." See *One Eleven Wines & Liquors, Inc. v. Div. Alcoholic Bev. Cont.,* 50 *N. J.* 329 (1967); *Gallagher v. City of Bayonne,* 106 *N. J. Super.* 401 (*App. Div.*), *aff'd o. b.,* 55 *N. J.* 159 (1969); *Paterson Tav. & Grill Owners Ass'n v. Borough of Hawthorne,* 57 *N. J.* 180 (1970); *cf. Griswold v. Connecticut,* 381 *U. S.* 479, 85 S. Ct. 1678, 14 *L. Ed.* 2d 510 (1965); *Stanley v. Georgia,* 394 *U. S.* 557, 89 S. Ct. 1243, 22 *L. Ed.* 2d 542 (1969); *Eisenstadt v. Baird,* 405 *U. S.* 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972); *State v. Baird,* 50 *N. J.* 376 (1967).

In *One Eleven* we passed on a departmental regulation which imposed a flat prohibition on the congregation of apparent homosexuals in licensed premises. The regulation was an early one which was continued by the department in its absolute terms despite growing public tolerance and deeper public understanding of the subject. We pointed out that the department's concern with improper conduct at licensed premises could readily be dealt with by "a fair and sensible regulation which, while permitting apparent homosexuals to

assemble in and patronize licensed establishments, prohibits overtly indecent conduct and public displays of sexual desires manifestly offensive to currently acceptable standards of propriety." 50 *N. J.* at 342. We rejected, as unsupported by evidence, the Division's position that the flat prohibition was necessary as an enforcement measure and we struck it as unreasonable and as going beyond the public need. 50 *N. J.* at 341.

In *Gallagher* the Appellate Division voided an ordinance provision which prohibited women at public bars; the court referred to the changing public attitudes and stressed the principles set forth in *One Eleven* that liquor regulations adopted in the exercise of police powers "must be reasonable and not go beyond the public need." 106 *N. J. Super.* at 405. On appeal, we affirmed on the opinion below. 55 *N. J.* 159. In *Hawthorne* we invalidated an ordinance restriction against female bartenders. In the course of our opinion we noted that "although in earlier times, comparable restrictions in the liquor field were generally sustained, the recent opinions in *One Eleven* and *Gallagher* indicate that our courts will now direct their attention more pointedly to the controlling requirements of reasonableness and public need." 57 *N. J.* at 188–189.

The Division does not now assert that it had any proper concern with Hausner's private moralities or that it considers that there was actually some factual relationship between the prohibited articles and the operation of the restaurant or the sale of alcoholic beverages. As indicated earlier in this *per curiam,* the Division takes the position that, notwithstanding that there was no such factual relationship, its proof that the prohibited articles were found within the technical outer borders of the licensed premises was sufficient in itself and that the Division would be "considerably hampered" in the discharge of its responsibilities if it were obliged to establish more. But at this advanced stage in the Division's experience, it may no longer fairly be presumed, and nothing at all has been placed before us to indicate,

that sound liquor control would in anywise be interfered with if a showing of the presence of the articles were deemed to constitute a prima facie case, leaving to the licensee the right to establish by way of affirmative defense, as was done here, that he possessed the articles strictly for his private use in objective circumstances which adequately evidenced the strictly private nature of the possession.

It appears clear to us that Rules 9 and 17 of State Regulation 20, insofar as they flatly exclude any such right in the licensee to defend in the manner aforementioned, are oppressive and go beyond any current public need; to that extent they are deemed unreasonable. There should be early revision of them in the light of the currently controlling principles expressed in *One Eleven Wines & Liquors, Inc. v. Division Alcoholic Bev. Cont., supra,* 50 *N. J.* 329 and reaffirmed in *Gallagher* (106 *N. J. Super.* 401) and *Hawthorne* (57 *N. J.* 180) ; in the course of their revision consideration might perhaps be given to the suggestions of language imprecision and constitutional infirmity made by the licensee during the course of these proceedings. *Compare Jeanne's Enterprises, Inc. v. State of N. J., etc., supra,* 93 *N. J. Super.* 230 and *In re Club "D" Lane, Inc., supra,* 112 *N. J. Super.* 577 *with LaRue v. State of California,* 326 *F. Supp.* 348 (*C. D. Cal.*), *prob. juris. noted,* 404 *U. S.* 999, 92 S Ct. 559, 30 *L. Ed.* 2d 551 (1971) and *Bruno v. City of Kenosha,* 333 *F. Supp.* 726, 729–730 (*E. D. Wis.* 1971).

Reversed, with direction that the suspension of the license be vacated.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.